UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY DAVID SMITH,

Petitioner,

v.

MICHELLE FLOYD,

Respondent.

_____/

Case No. 2:21-cv-10927

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS [1], DECLINING
TO ISSUE CERTIFICATE OF APPEALABILITY, AND
DENYING LEAVE TO APPEAL IN FORMA PAUPERIS**

Petitioner Larry David Smith is an inmate at the Cooper Street Correctional
Facility in Jackson, Michigan. ECF 1, PgID 1. A jury convicted Petitioner of safe
breaking in violation of Michigan Compiled Laws § 750.531 and breaking and
entering a building with intent to commit larceny in violation of Michigan Compiled
Laws § 750.110. *Id.* A State court judge sentenced him as a fourth habitual offender
to concurrent terms of ten to thirty-five years' imprisonment and six to nineteen years
respectively. *See* ECF 16-23; Mich. Comp. Laws § 769.12. After Petitioner served six
years of his sentence, he filed a pro se habeas petition under 28 U.S.C. § 2254. ECF
1. He also moved for leave to file a motion to recuse, moved to recuse, and moved for
immediate consideration of his habeas petition. *See* ECF 47; 48; 49. For the reasons
below, the Court will grant the motion to file a motion to recuse, deny the motion to

1

recuse, deny the motion for immediate consideration as moot, and deny the petition for habeas relief.[1]

## BACKGROUND

Because a recitation of facts by the Michigan Court of Appeals is "presumed correct on habeas review," the Court will use that court's opinion for background. *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).

In 2015, a Dollar General in Coloma Township, Michigan reported a burglary. *People v. Smith*, No. 340845, 2018 WL 4926977, *1 (Mich. Ct. App. Oct. 9, 2018). The assistant manager of the Dollar General explained that the burglary alarm was silenced, the surveillance camera was broken, the safe was drilled and opened, and the cash registers were open. *Id.* In total, about $4,500 was burgled. *Id.* Coloma Township Police Officer Andrew Ulleg responded to the report and "discovered that two holes had been cut into the exterior of the building on the east and west sides." *Id.* Officer Ulleg "also discovered that phone cords and internet cables had been severed inside the store, disabling the alarm system" and he "confirmed that the safe had been drilled open and that a surveillance camera had been broken." *Id.* But several cameras were unbroken. *Id.* The unbroken cameras captured video of a "masked individual inside the store from around 1:39 a.m. to 2:59 a.m." *Id.* The individual was holding a bottle of what appeared to be fruit punch flavored Powerade7. *Id.* The store manager testified that the bottle was stolen. *Id.* Another

---

[1] The Court need not hold a hearing because Petitioner is proceeding pro se and is incarcerated. E.D. Mich. L.R. 7.1(f)(1).

Coloma Township Police Officer "searched the outside area surrounding the Dollar General [and] discovered a bank deposit bag and a red Powerade7 bottle in a cornfield approximately 400 feet from the building." *Id.*

The Michigan State Police tested the bottle for DNA and found DNA that matched Petitioner's. *Id.* Before trial, Petitioner "moved for a *Daubert* hearing concerning the admissibility of the results of the DNA testing done in this case." *Id.* After a hearing, the trial court admitted the evidence. *Id.* The State then moved to admit evidence that Petitioner pleaded guilty to a burglary of a Dollar General in Indiana in 2009 and a break in at the Pine View Golf Club in Indiana in 2015. *Id.* The trial court admitted both pieces of evidence. *Id.* The owners of the Pine View Golf Club testified that the individual who burglarized their club stole and drank a bottle of red Powerade7. *Id.* at *2. And Petitioner's DNA was found on that bottle too. *Id.* At trial, an Indiana State Police Officer testified that at the 2009 robbery of a Dollar General the police "found that an opening had been cut in an exterior wall, telephone wires had been cut, a security camera had been damaged, and a safe had been broken into with a drill." *Id.*

At trial, the prosecution and defendant presented experts in the field of DNA analysis. *Id.* The prosecution's expert testified that a "DNA profile [obtained from the bottle] was matched, using comparison software called STRmixJ, to defendant's DNA." *Id.* The expert "testified that it was at least 17 octillion times more probable that the DNA on the red Powerade7 bottle was from defendant than from an unrelated contributor." *Id.* The expert also testified that he had performed the DNA

testing on the Powerade7 bottle recovered from the Pine View Golf Club in 2015 but that he "[did not] us[e] the STRmixJ software, but [a] software provided by the FBI." *Id.* Defendant's expert testified that the identity of the major DNA profile was "not in dispute" and opined that there was "no doubt" that the DNA from the major donor came from defendant. *Id.* He testified, however, that "he believed that the enormous probability number generated by STRmixJ was not only useless and wasteful' but inappropriate." *Id.* (quotation marks omitted). At the close of evidence, Petitioner requested an instruction on aiding and abetting to clarify that mere presence is not enough to convict him. *Id.* The trial court denied the request, and the jury convicted Petitioner. *Id.*

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals, but that court denied him relief. *Id.* at *3–11. Petitioner then filed for leave to appeal with the Michigan Supreme Court and was denied. *See People v. Smith*, 503 Mich. 1036 (2019).

Next, Petitioner filed a motion for relief from judgment with the State trial court, appealed the State trial court's denial of his motion, and moved for leave to appeal to the Michigan Supreme Court when the Michigan Appellate court affirmed the State trial court. *See People v. Smith*, No. 16-000534-FC (Berrien Co. Cir. Ct. Jan. 24, 2020); *People v. Smith*, No. 353597 (Mich. Ct. App. July 23, 2020) (recon. den. August 31, 2020). The Michigan Supreme Court denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). *People v. Smith*, 507 Mich. 870 (2021).

Having exhausted his opportunity for relief in State court, Petitioner filed the present habeas petition and alleged violation of his right to: (1) fair and impartial appellate judges in direct appeal; (2) fair and impartial appellate judges in post-conviction appeal; (3) effective assistance of appellate counsel on direct appeal; (4) a fair and impartial trial court judge to decide his motion for relief from judgment; (5) discovery that was necessary to a fair trial and appeal; (6) a trial free of prosecutorial misconduct; (7) to be free of a conviction that resulted from insufficient evidence; and (8) effective, competent assistance of trial counsel. *See* ECF 1, PgID 8–40. Respondent responded and argued that the Court should deny the petition because some of the claims are barred by procedural default, and all the claims lack merit. ECF 15.

## LEGAL STANDARD

Under 28 U.S.C. § 2241 et seq., "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted . . . unless the adjudication of the claim:" (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A State court decision is contrary to clearly established law "if it applies a rule that contradicts the governing law set forth in Supreme Court cases or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and

nevertheless arrives at a result different from that precedent." *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (cleaned up).

A federal court may grant habeas relief "if the State court identifies the correct governing legal principle from the Supreme Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (cleaned up). Yet "in order for a federal court to find a State court's application of Supreme Court precedent unreasonable, the State court's decision must have been more than incorrect or erroneous. The State court's application must have been objectively unreasonable." *Id.* at 520-521 (cleaned up). There is thus a highly deferential standard for evaluating State court rulings. *See Renico v. Lett*, 559 U.S. 766, 773 (2010).

If "fairminded jurists could disagree on the correctness of the [S]tate court's decision" habeas relief is inappropriate. *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quotation omitted). Indeed, the Supreme Court has emphasized "that even a strong case for relief does not mean the [S]tate court's contrary conclusion was unreasonable." *Id.* (citation omitted). In fact, a State prisoner must show that the State court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* Federal judges "are required to afford [S]tate courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 575 U.S. 312, 316 (2015).

Moreover, a federal court may grant habeas relief only if a petitioner's claims were adjudicated on the merits and the State court's adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established law. 28 U.S.C. § 2254(d)(1). "A [S]tate court's decision is contrary to . . . clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court cases] or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [that] precedent." *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (cleaned up) (quotation omitted).

## DISCUSSION

As an initial matter, the Court will grant the motion for leave to file a motion to recuse, ECF 47. Petitioner moved for leave to file a motion to recuse in January 2023. *Id.* Then, without waiting for an order granting or denying his motion, he filed a motion for the Court to recuse itself, ECF 48. The Court will grant the motion for leave to file a motion to recuse so that it can consider the motion to recuse on the merits.

A federal judge must "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). When a party requests a federal judge's disqualification, he must "file[] a timely and sufficient affidavit" showing that the judge "has a personal bias or prejudice either against him or in favor of any adverse party." 28 U.S.C. § 144. The affidavit must include "the facts and the reasons for the belief that bias or prejudice exists." *Id.* The statute

7

imposes an objective standard: a judge must disqualify himself if "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Burley v. Gagacki*, 834 F.3d 606, 616 (6th Cir. 2016) (quotation omitted). A plaintiff must provide evidence that a judge "has abandoned his role as an impartial arbiter." *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 F. App'x 826, 838 (6th Cir. 2009) (quotation omitted). "[R]ulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994) (citation omitted).

Petitioner moved for the Court to recuse because "the Court has exhibited no indication that it can, or will, address the gross misconduct that has resulted in Petitioner's unlawful incarceration and irreparable harm for seven long years." ECF 48, PgID 4289 (alterations omitted). Petitioner argued that the Court "acted as his opposing party in this habeas action" because the Court: (1) characterized him as a vexatious litigant; (2) did not require a government response to each of his seventeen motions; (3) "disregard[ed] [United States] Supreme Court decisions and Sixth Circuit decisions"; (4) did not require the Government to respond "to answer the valid specific allegations presented in this habeas [petition] as is required by habeas rule 5(b)"; (5) "refused [and] failed to order [Michigan Attorney General] Schultz to" file "major parts of the [S]tate court record that support Defendant's habeas grounds for relief"; and (6) issued orders that Petitioner characterized as "utter nonsense." ECF 48, PgID 4290–95. The Court will deny the motion to recuse because no reasonable person with knowledge of the facts would conclude that the Court is biased against

8

Petitioner. *See Burley*, 834 F.3d at 616. The Court will briefly address each of the six grounds Petitioner raised.

First, Petitioner was—and is—a vexatious litigant. In a previous Order, the Court found that "in the Court's experience, Petitioner's conduct is one of the most extreme cases of a vexatious § 2254 habeas petitioner." ECF 36, PgID 4113. That remains true. Petitioner filed a plethora of motions, s*ee* ECF 2; 10; 13; 17; 18; 21; 22; 23; 27; 28; 29; 30; 33; 34, almost all of which were frivolous. The Sixth Circuit has noted that enjoining vexatious litigants from filing motions "is the proper method for handling the complaints of prolific litigators", which is what the Court did. *Filipas v. Lemons*, 835 F.2d 1145, 1146 (6th Cir. 1987). Moreover, Petitioner is not the first litigant the Court has characterized as vexatious. *See e.g.*, *Blake Jones v. Ronda M. Fowlkes Gross, et al.*, Case No. 2:23-cv-10520 (E.D. Mich. April 14, 2023) (Murphy, J.), ECF 41, PgID 297; *L.V. Nagle & Associates, Inc. v. Tubular Steel, Inc., et al.*, Case No. 2:19-cv-11399 (E.D. Mich. April 20, 2021) (Murphy, J.), ECF 24, PgID 69. Consequently, Petitioner's claim that the Court should recuse itself because a reasonable person would view the Court as biased because it characterized him as "vexatious" fails.

The second argument also fails because no reasonable person would believe the Court is not impartial merely because it did not require the Government to respond to every one of Petitioner's *seventeen* motions. Indeed, most of the motions were frivolous, and the Court did not need more briefing. Besides, any response by the Government could only have weighed against Petitioner. Thus, Petitioner benefited

from the Court's purported oversight. Because a reasonable person would not view the Court has biased on the second ground, and because Petitioner was not harmed, the second ground misses the mark.

Third, the Court did not ignore precedent. Petitioner argued that the Court should have waited to resolve his motion to strike until after it resolved his "request to file a reply." ECF 48, PgID 4291 (emphasis omitted). Petitioner is incorrect. The Court denied his motion to strike at the same time it denied his request for an extension of time to file a reply. *See* ECF 35; 36. Moreover, Petitioner did not cite any binding precedent that would require the Court to resolve a request for an extension of time to file a reply before resolving a motion to strike. *See* ECF 48. The third argument thus fails.

Fourth, Petitioner argued that a reasonable person would view the Court as biased because it did not require the Government to comply with Habeas Rule 5(b). *See* ECF 48, PgID 4292. But that argument fails because the Government complied with Rule 5(b). Under Rule 5(b), the Government "must address the allegations in the petition." Petitioner claimed that "Respondent never complied with Rule 5(b), especially for grounds one, two, and six." *Id.* (citing ECF 47, PgID 4267). He is wrong. The Government responded to grounds, one, two, four, and six. *See* ECF 15, PgID 939, 958. The fourth argument is thus meritless.

Petitioner's fifth argument, that the Court should have allowed him to take discovery and that it should have held an evidentiary hearing, fails because neither discovery nor an evidentiary hearing were needed. "An evidentiary hearing . . . may

be held only when the petition 'alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing.'" *Griffin v. Berghuis*, 298 F. Supp. 2d 663, 678 (E.D. Mich. 2004) (quoting *Sawyer v. Hofbauer*, 299 F.3d 605, 610 (6th Cir. 2002)). And "[h]abeas petitioners have no right to automatic discovery." *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001). But "[a] district court may . . . permit discovery in a habeas proceeding if the 'petitioner present[ed] specific allegations showing reason to believe that the facts, if fully developed, may lead the district court to believe that federal habeas relief is appropriate.'" *Id.* (quotation omitted). As discussed below, the facts of the present petition are clear. No reasonable person with knowledge of the facts would believe the Court is biased because it denied Petitioner unnecessary discovery or a useless evidentiary hearing.

Last, Petitioner may disagree with the Court's prior Orders and believe that they are "utter nonsense," ECF 48, PgID 4294, but he did not describe why the prior orders were wrong or why recusal, not reconsideration, is the proper cure. Moreover, the Court's prior orders are correct, and a reasonable person would not view the Court as a biased adjudicator because of them.

In sum, all of Petitioner's allegations of unfairness and bias are baseless, and no "reasonable person with knowledge of all the facts would conclude that the [Court's] impartiality might reasonably be questioned." *Burley*, 834 F.3d at 616.

Consequently, the motion to recuse is denied. Because recusal is not warranted here, the Court will proceed to analysis of the eight claims in Petitioner's habeas petition.[2]

I.   Claim One

Petitioner asserted that he suffered from judicial bias on direct appeal. ECF 1, PgID 8–9. He alleged that the appellate judges "intentionally and deliberately fabricated falsehoods (lies) about material facts/evidence, highly exaggerated material facts/evidence in a deceptive manner, omitted material facts/evidence that favored Defendant, and repeatedly misstated/misapplied the applicable law." *Id.* at 5–6.

Under the Due Process clause of the Fourteenth Amendment, a criminal defendant is entitled to a fair trial before a judge with no actual bias against the defendant or an interest in the outcome of the case. *See Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997). An adverse ruling against a criminal defendant does not, standing alone, show bias or prejudice. *See Liteky*, 510 U.S. at 555 ("judicial rulings alone almost never constitute a valid basis for a bias or partiality motion"). In fact, a constitutional violation occurs only when a judge's rulings or statements show "a predisposition so extreme as to display clear inability to render fair judgment."

---

[2] Respondent contended that some of the habeas claims are barred by procedural default. ECF 15, PgID 958. But procedural default is not a jurisdictional bar to federal habeas relief. *See Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005). Moreover, federal courts on habeas review "are not required to address a procedural default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citation omitted). Because the procedural issue here is complex and intertwined with the merits of the ineffective assistance of counsel claims, the Court will decline to dismiss the claims for procedural default and will instead address them on the merits.

*Johnson v. Bagley*, 544 F.3d 592, 597 (6th Cir. 2008). In reviewing a judicial bias claim, a federal habeas court should presume that the judge properly discharged his or her official duties. *Withrow v. Larkin*, 421 U.S. 35, 47 (1975).

Petitioner raised a claim of judicial bias on collateral review, and the State courts denied him relief. The State courts' denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, Petitioner neither alleged nor established that the appellate court judges on direct appeal had a "personal interest" in his criminal proceedings. *Gramley*, 520 U.S. at 904–05. Second, Petitioner failed to show that those judges had a "deep seated favoritism or antagonism that would make fair judgment impossible." *Id.* Instead, Petitioner challenged the appellate judges' recitation of the facts, their view of the evidence presented at trial, and their consideration and interpretation of the law applicable to his case. ECF 16-26, PgID 2619–30. But his allegations contested only the Michigan Court of Appeals' legal rulings on his claims. And legal rulings, standing alone, cannot establish that the appellate judges engaged in judicial misconduct or were otherwise biased against him. *See Liteky*, 510 U.S. at 555. Petitioner therefore failed to overcome the presumption that judges properly discharge their duties in deciding his case on direct appeal. *See Withrow*, 421 U.S. at 47. The first claim therefore fails.

II.    Claims Two and Four

Petitioner also asserted that he suffered from judicial bias by the trial and appellate judges on *collateral* review. ECF 1, PgID 9; 16. Petitioner raised his claims

13

on collateral review, and the State courts denied him relief. The State courts' denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Indeed, there is no federal constitutional right to State collateral review of State criminal convictions. *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987). Consequently, Petitioner's allegation that his State collateral review proceeding was deficit falls outside the scope of federal habeas review, and his second and fourth claim fail. *See Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007).

III.   <u>Claim Three</u>

Petitioner next argued that his appellate counsel was ineffective in a myriad of ways including: (1) failing to use all the pages allowed; (2) failing to request transcripts; (3) failing to cite the record; (4) failing to attach certain documents; (5) failing to cite certain cases and provide certain supplemental authority; (6) misstating and omitting issues; (7) failing to request a remand for a Ginther hearing; (8) failing to perform sufficiently at oral argument; (9) attaching privileged emails to an attorney withdrawal motion; and (10) failing to timely send Petitioner the State's brief or file a reply brief. ECF 1, PgID 11–13.

To establish ineffective assistance of counsel, a habeas petitioner must show "that counsel's performance was deficient . . . [and] that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The court must . . . determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. But "the court should recognize that counsel is strongly presumed to have

rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Judicial scrutiny of counsel's performance is therefore "highly deferential." *Id.* at 689. And a criminal defendant "is prejudiced only if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

A criminal defendant does not have a constitutional right to have appellate counsel raise every non frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). In fact, the failure to raise an issue on appeal can only be ineffective "if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004).

Petitioner raised his ineffective of assistance claim on collateral review in the State courts. And the trial court denied relief and explained that: (1) "appellate counsel's decision to focus on different arguments does not suggest appellate counsel was ineffective"; (2) "the Defendant has failed to specify which arguments appellate counsel left out and cannot specify how the Defendant's outcome on appeal would have been different if all of the allowed pages were used"; (3) "Defendant fail[ed] to mention which transcripts appellate counsel failed to have transcribed"; (4) failure to request a Ginther hearing does not "automatically establish good cause", and Petitioner failed to do so; (5) the privileged documents that were attached to a motion were "a separate disciplinary issue that does not impact counsel's effectiveness during appeal or prejudice the Defendant and should be addressed elsewhere"; and (6) "Defendant has [] failed to present a specific argument that appellate counsel

should have argued in a reply brief that would have made the outcome of the Defendant's appeal different." ECF 16-25, PgID 2608–12. The State court concluded that "Defendant has not demonstrated that his appellate counsel made an error so serious that they were not functioning as counsel guaranteed by the Sixth Amendment and denied him relief. *Id.*

The State court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, to the extent that Petitioner asserted that appellate counsel was procedurally ineffective for failing to use all the pages allowed, failing to request transcripts, failing to request a remand for a Ginther hearing, failing to perform sufficiently at oral argument, attaching privileged emails to an attorney withdrawal motion, and failing to timely send him the State's brief and file a reply brief, he failed to allege facts that demonstrated *how* such conduct prejudiced his appeal. *See* ECF 1. And conclusory allegations, without evidentiary support, are insufficient to warrant federal habeas relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998).

Second, to the extent that Petitioner asserted that appellate counsel failed to request or obtain transcripts, provide facts, and discuss relevant cases on appeal, his claim is belied by the record. The appellate record shows that counsel requested and obtained transcripts, provided facts, and discussed relevant case law on appeal. *See* ECF 16-28, PgID 2981–92; 2993–3023.

Third, to the extent that Petitioner asserted that appellate counsel was substantively ineffective by misstating or omitting issues, failing to properly argue

facts and make legal arguments, and failing to attach documents, he failed to show that the omissions fell outside the wide range of professionally competent assistance. Besides, appellate counsel raised substantial issues on direct appeal including claims challenging the jury instructions, the introduction of other acts evidence, the admission of expert witness testimony, the sufficiency of the evidence, and the impartiality of the trial court. *Id.* at 2993–3023.

Moreover, even if appellate counsel erred in some fashion, Petitioner cannot show that he was prejudiced by counsel's conduct because the pro per and collateral review claims lack merit for the reasons stated by the Michigan Court of Appeals on direct appeal, *see Smith*, 2018 WL 4926977, at *3-11, and by the State trial court in denying relief from judgment on collateral review, *see* ECF 16-25. Appellate counsel cannot be deemed ineffective for failing to raise issues that lack merit. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."). Petitioner thus failed to show that habeas relief is warranted for his third claim.

IV.   <u>Claim Five</u>

Petitioner asserted that he is entitled to habeas relief because his due process rights were violated by the lack of discovery and evidentiary hearings during his State court proceedings. ECF 1, PgID 19–21. To the extent that Petitioner alleged a violation of State discovery rules, he is not entitled to relief. A federal court may only grant habeas relief to a person who is "in custody in violation of the *Constitution or laws or treaties of the United States.*" 28 U.S.C. § 2254(a) (emphasis added). Trial

court errors in the application of State procedure or evidentiary law are not cognizable as grounds for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine [S]tate court determinations on [S]tate law questions.").

Similarly, Petitioner's evidentiary hearing claim is not cognizable on habeas review because it is a State law claim. *See Hayes v. Prelesnik*, 193 F. App'x 577, 584 (6th Cir. 2006). There is also no clearly established Supreme Court law which recognizes a constitutional right to an evidentiary hearing on State post-conviction review. *Id.* Thus, habeas relief is not warranted on the fifth claim.

V.    Claim Six

Petitioner argued that he is entitled to habeas relief because the prosecutor engaged in misconduct by failing to identify or produce a res gestae witness, committed discovery violations, made false statements and omissions regarding the other acts evidence, sought to admit the other acts evidence, elicited excessive evidence about the other acts and overemphasizing such evidence, misstated the law and used false or misleading legal arguments, and referred to facts not in evidence. ECF 1, PgID 23–27.

Prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637,

18

643 (1974). And a prosecutor's failure to disclose evidence favorable to the defense constitutes a denial of due process only "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

To find a *Brady* violation the suppressed evidence must be material and favorable to the accused. *Elmore v. Foltz*, 768 F.2d 773, 777 (6th Cir. 1985). Favorable evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). A *Brady* violation does not occur if previously undisclosed evidence is disclosed during trial unless the defendant is prejudiced by the prior non-disclosure. *United States v. Word*, 806 F.2d 658, 665 (6th Cir. 1986). Thus, to establish a *Brady* violation, a petitioner must show that: (1) evidence was suppressed by the prosecution in that it was not known to the petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of guilt. *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000).

The Michigan Court of Appeals considered Petitioner's *Brady* claim on direct appeal and denied relief. *See Smith*, 2018 WL 4926977, at *9–10. The court explained that "the majority of [Petitioner's] claimed discovery violations involve the prosecution's alleged tardy provision of documentary evidence that was ultimately provided to defendant and was not exculpatory." *Id.* "And although defendant contend[ed] that he was "surprised" by the prosecution's revelation that a videotaped

recording of his police interview existed, he neglect[ed] to mention that the trial court found that a discovery violation had occurred regarding that recording and ruled that the video was inadmissible at trial." *Id.* Ultimately, the Michigan Court of Appeals rejected each of Petitioner's claims because they were unsupported by facts and without merit. *See id.*

The decision of the Michigan Court of Appeals is not contrary to Supreme Court precedent and is not an unreasonable application of federal law or the facts. First, as to the alleged res gestae witness, federal law does not require the production of res gestae witnesses. *See Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 601 (E.D. Mich. 2001); *Atkins v. Foltz*, 856 F.2d 192 (Table), 1988 WL 87710, *2 (6th Cir. Aug. 24, 1988) ("[U]nder federal law, there is no obligation on the part of the prosecutor to call any particular witness unless the government has reason to believe that the testimony would exculpate the petitioner.") (citation omitted). Thus, the requirement that a prosecutor produce res gestae witnesses is merely a matter of State law and is not cognizable on federal habeas review. *See Collier v. Lafler*, 419 F. App'x 555, 559 (6th Cir. 2011). Besides, the record shows that Petitioner was aware of the witness at the time of trial, *see* ECF 16-18, PgID 1939–40; ECF 16-19, PgID 1972, 1982, and he could have secured her testimony at that time. Petitioner failed to show that the prosecutor violated *Brady* violation or otherwise acted in a manner that made trial fundamentally unfair.

Second, as to the prosecutor's alleged discovery violations, which seem to largely concern lab and police reports and surveillance videos, the record shows that

those materials were provided to Petitioner before or during trial, *see* ECF 16-28, PgID 3066–68. Petitioner failed to allege facts which show that such materials were exculpatory or favorable to the defense or that he was prejudiced by any delayed disclosure. *See* ECF 1. And as discussed, conclusory allegations cannot justify habeas relief. Petitioner failed to show that the prosecutor committed a *Brady* violation or engaged in misconduct which rendered his trial fundamentally unfair.

Third, as to the prosecutor's actions involving the use of other acts evidence, Petitioner failed to establish that the prosecutor committed misconduct. The trial court conducted a pretrial hearing and ruled that the evidence was admissible, *see* ECF 16-7, PgID 1106–12, and the trial judge later admitted the evidence (via several witnesses) at trial, *see generally*, ECF 16-19; ECF 16-20. A prosecutor's good faith effort to admit evidence does not constitute misconduct, particularly where, as here, the trial court admitted the evidence. *See Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008) ("A prosecutor may rely in good faith on evidentiary rulings made by the [S]tate trial judge and make arguments in reliance on those rulings."). Additionally, the Michigan Court of Appeals ruled that the other acts evidence was properly admitted under State law. Such a ruling is binding on federal habeas review. *See, e.g., Bradshaw v. Richey*, 456 U.S. at 74, 76 (2005) ("a [S]tate court's interpretation of [S]tate law, including one announced on direct appeal of the challenged conviction, binds a federal [habeas] court"). Petitioner therefore failed to establish that the prosecutor engaged in misconduct which affected the fundamental fairness of his trial or appeal.

Last, the record reflects that the trial court properly instructed the jurors on the law, including the elements of the charged offenses, the presumption of innocence, reasonable doubt, the burden of proof, and the proper consideration of the other acts evidence, explained that the attorneys' statements, arguments, and questions are not evidence, and directed the jurors to evaluate the credibility of witnesses and to decide the case based solely on the evidence. *See* ECF -21, PgID 2501–16. The instructions mitigated any potential prejudice to Petitioner. *See, e.g., Hamblin v. Mitchell*, 354 F.3d 482, 495 (6th Cir. 2003). Jurors are presumed to follow the court's instructions. *Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citation omitted). And Petitioner failed to establish that the jurors did not follow the instructions the Court gave the jury. *See* ECF 1, PgID 23–27. As a result, habeas relief on claim six is not warranted.

VI.  <u>Claim Seven</u>

In his seventh claim, Petitioner alleged that he is entitled to habeas relief because the State prosecutor failed to present sufficient evidence to support his convictions. ECF 1, PgID 27–29. Respondent contended that the Court should deny Petitioner habeas relief on the claim because it lacked merit. ECF 15, PgID 972–81.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he [or she] is charged." *In re Winship*, 397 U.S. 358, 364 (1970). When reviving a sufficiency of the evidence claim, a court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*

*v. Virginia*, 443 U.S. 307, 318 319 (1979) (internal citation and footnote omitted). On habeas review, a federal court views this standard through the framework of the AEDPA. *See* 28 U.S.C. § 2254(d); *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Under AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review, the factfinder at trial and the state court on appellate review. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). The federal court must deny the sufficiency of evidence claim as long as either of the groups' views is reasonable. *See id.* Indeed, "it is the responsibility of the jury, not the court, to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). And "[a] reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citation omitted). Accordingly, the "mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." *Id.* at 789.

Under Michigan law, the elements of safe breaking are: (1) the defendant broke into a safe; and (2) at the time of the breaking, the defendant intended to commit a larceny. Mich. Comp. Laws § 750.531. The elements of breaking and entering a building with intent to commit a larceny are: (1) the defendant broke into a building, (2) the defendant entered the building, and (3) at the time of the breaking and entering, the defendant intended to commit a larceny therein. Mich. Comp. Laws § 750.110; *People v. Toole*, 227 Mich. App. 656, 658 (1998).

As with any offense, the prosecution must prove beyond a reasonable doubt that the defendant committed the charged offense. *People v. Kern*, 6 Mich. App. 406, 409 (1967). Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, *People v. Jolly*, 442 Mich. 458, 466 (1993), including the identity of the perpetrator, *Kern*, 6 Mich. App. at 409, and the defendant's intent or state of mind. *Dumas*, 454 Mich. at 398.

Petitioner raised his sufficiency of the evidence claim on direct appeal. ECF 26-18, PgID 3016–18. The Michigan Court of Appeals applied the *Jackson* standard and denied relief. *See id.* at 2923–37. In relevant part, the court explained that "Defendant does not dispute that the elements of these offenses were satisfied by the events that occurred at the Dollar General on August 23, 2015." *Id.* at 2933. And the court held that "circumstantial evidence and reasonable inferences arising from that evidence may be sufficient to prove the elements of a crime." *Id.* "Here, the jury was presented with evidence that a masked individual was observed by surveillance cameras inside the Dollar General long after it had closed for the night, and that the individual had taken a bottle of red Powerade7. The following morning, the Dollar General was found burglarized with its safe broken." *Id.* These facts, along with Petitioner's DNA on the bottle, were sufficient to support an inference of guilt. *Id.*

The State court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The prosecution presented physical and circumstantial evidence linking Petitioner to the crime. *See id.* In

24

particular, the prosecution presented evidence that the perpetrator took a bank deposit bag and more than $3000 from the store, ECF 16-19, PgID 1966, 1969, that a surveillance camera captured an image of the masked perpetrator inside the store holding a red Powerade bottle, *id.* at 1970, 1979–80, 1986, 2041, that a red Powerade bottle was found about 400 feet from the store and 10 feet from the bank deposit bag, ECF 16-21, PgID 2335–37, and that Petitioner's DNA was found on the red Powerade bottle. ECF 16-20, PgID 2243–44. Given the evidence, a reasonable jury could conclude that Petitioner was the person who committed the crime. Additionally, the evidence that Petitioner was convicted of committing similar crimes, one involving another Dollar General Store and one involving a golf course and that his DNA was found on a red Powerade bottle in the prior case too, provided additional evidence of a common plan or scheme and his identity. In short, there was sufficient evidence for a reasonable jury to convict Petitioner.

Petitioner nevertheless challenged the jury's evaluation of the testimony and the evidence presented at trial. *See* ECF 1, PgID 27–31. But it is the job of the fact finder at trial, not a federal habeas court, to resolve evidentiary conflicts. *See Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). Thus, habeas relief is not warranted on the seventh claim Petitioner raised.

VI.   <u>Claim Eight</u>

Last, Petitioner asserted that he is entitled to habeas relief because his pretrial and standby trial counsel were ineffective. ECF 1, PgID 31–35. Petitioner argued that he was effectually forced to represent himself at trial without adequate resources. *Id.*

Specifically, he claimed that his pretrial and standby counsel failed to learn the identity of a key witness, investigate the other acts evidence, obtain his medical records to show that he had two surgeries before the crime, request a Daubert hearing to challenge the DNA evidence, present the issue of prosecutorial misconduct, raise the issue of trial judge bias, and indicate an intent to present evidence in support of his defense or seek reconsideration of the trial court's decision to admit the other acts evidence. *Id.*

Under the Sixth Amendment, a criminal defendant is guaranteed the right to the effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether trial counsel performed ineffectively. First, a petitioner must prove that his counsel's performance was deficient. A petitioner must show that his trial counsel made errors so serious that he or she e was not functioning as counsel guaranteed by the Sixth Amendment. *Id.* at 687. Second, a petitioner must establish that counsel's deficient performance prejudiced the defense. *Id.* To succeed, a petition must show that his trial counsel's errors were so serious that they deprived a petitioner of a fair proceeding. *Id.* To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id.* at 690. A reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. In fact, there is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.*

at 690. And the petitioner bears the burden of overcoming the presumption that his trial counsel's challenged actions were a sound strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 686.

A federal court's consideration of ineffective assistance of counsel claims is limited on habeas review because of the deference given trial attorneys and State appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (cleaned up). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

Petitioner raised an ineffective assistance of counsel claim on direct appeal. And the Michigan Court of Appeals applied the *Strickland* standard before it denied relief. ECF 16-28. The court explained that "defendant was assigned, and ultimately rejected, three different court appointed attorneys before deciding to represent himself." *Id.* at 2936. And "Attorney Richard Sammis, his third appointed attorney,

27

remained available as standby counsel." *Id.* But while Petitioner argued his attorneys were ineffective in many ways, each of his arguments failed. For example, "[w]ith regard to a DNA expert, defendant himself admit[ed] in his brief that his second attorney, at least, did request funds from the Court to engage a DNA expert." *Id.* And his attorney "did request a Daubert hearing and funds to pay for an expert." *Id.* The court thus found that Petitioners' claims were contradicted by the facts. The court also found that "[Petitioner] cannot demonstrate prejudice." *Id.* at 2937. Moreover, because Petitioner chose to represent himself at trial, he could "not demonstrate[], for example, that the conduct of his attorneys prevented him from calling [a key witness] as a witness, or from raising issues related to medical conditions in 2015, or from raising issues of alleged prosecutorial misconduct or judicial bias." *Id.* Because it held that any tactical errors lay at Petitioner's feet, the court ultimately rejected his claim of ineffective assistance of counsel. *Id.* The Court also found that the lack-of-resources argument failed because Petitioner chose to represent himself and could not then appeal about a lack of resources, especially because he in fact did have adequate resources. *Id.* The Michigan Court of Appeals concluded that:

> To permit a defendant in a criminal case to indulge in the charade of insisting on a right to act as his own attorney and then on appeal to use the very permission to defend himself in pro per as a basis for reversal of conviction and a grant of another trial is to make a mockery of the criminal justice system and the constitutional rights sought to be protected."

> *Id.* (citation omitted).

The State court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, as to the key witness,

even assuming that counsel erred by failing to identify or investigate her before trial, Petitioner failed to establish that he was prejudiced by counsel's conduct. *See* ECF 1. And as discussed above, Petitioner presented no affidavit or other evidence of the key witness's potential testimony. Speculative and conclusory allegations are insufficient to warrant federal habeas relief. *See Workman*, 178 F.3d at 771. Besides, Petitioner was aware of the key witness at the time of trial and could have attempted to secure her testimony at that time.

Second, as to counsel's alleged failure to investigate the other acts evidence, object to the alleged prosecutorial misconduct, and raise the trial court's alleged judicial bias, Petitioner failed to show that counsel erred or that he was prejudiced by counsel's conduct given the Michigan Court of Appeals' reasonable determination that the other acts evidence was properly admitted, that the prosecutor did not engage in misconduct, and that the trial court was not biased against him. Counsel cannot be deemed ineffective for failing to make a futile or meritless argument. *Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020).

Third, as to counsel's alleged failure to investigate Petitioner's medical records, Petitioner failed to show how pretrial and standby counsel's conduct affected his performance at trial given that he was aware of, and could have obtained, his own medical records. Even if counsel erred by failing to obtain those records, Petitioner failed to show that such conduct prejudiced the defense or affected the outcome at trial. To be sure, Petitioner questioned a defense witness about Petitioner's medical condition at trial. *See* ECF 16-21, PgID 2405–06, 2408. Thus, the jury knew Petitioner

had injured his shoulder and undergone a hernia surgery in 2015. Petitioner thus failed to establish that he was prejudiced by counsel's conduct.

Fourth, as to a DNA expert and a Daubert hearing, the record reveals that pre-trial counsel or standby counsel requested and obtained an expert and requested and obtained a Daubert hearing. *See* ECF 1, PgID 33; ECF 16-8; ECF 16-10; ECF 16-11; ECF 16-12. Petitioner also presented a defense DNA expert at trial. *See* ECF 16-20, PgID 2269–81. Consequently, even if one or more of Petitioner's attorneys erred by failing to take action on such matters, Petitioner failed to establish that he was prejudiced by such conduct because counsel ultimately helped him obtain an expert witness to challenge the prosecution's DNA evidence at trial.

Fifth, Petitioner's claims that his counsel had no intention of presenting defense evidence or seeking reconsideration of the ruling to admit the other acts evidence are speculative and unsupported by the facts. *See e.g.*, *id.* And as discussed above, conclusory allegations cannot justify habeas relief. Petitioner therefore failed to establish that he received ineffective assistance of counsel.

Last, the Court will note that Petitioner chose to represent himself at trial with the assistance of standby counsel. A criminal defendant "cannot complain about the quality of his own defense" when he waived counsel and chose to represent himself. *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975). Nor is there any constitutional right to hybrid representation; thus, a defendant who waived his right to counsel ordinarily cannot later claim that standby counsel was ineffective. *See Wilson v. Parker*, 515 F.3d 682, 696–97 (6th Cir. 2008), *as amended on denial of reh'g and reh'g*

*en banc* (Feb. 25, 2009). Here, Petitioner failed to demonstrate that his pretrial or standby counsel's conduct prevented him from challenging the prosecution's case or otherwise presenting a defense at trial. *See* ECF 1. Consequently, habeas relief is not warranted on this claim.

In sum, each of the eight claims Petitioner raised fail, and he is not entitled to habeas relief. And to the extent Petitioner claimed he is entitled to habeas relief because of "cumulative errors" at trial, ECF 1, PgID 26, 35, he is wrong. The Sixth Circuit has held that a cumulative error claim is not cognizable on habeas review. *See Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) (citation omitted). The Court will therefore deny Petitioner habeas relief.

To appeal the Court's decision, Petitioner must obtain a certificate of appealability, which requires him to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner must show "that reasonable jurists could debate whether" the Court should have resolved the § 2254 petition "in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (internal quotation marks and quotation omitted). Jurists of reason would not debate the Court's denial of the petition. The Court will thus deny a certificate of appealability. And the Court will deny Petitioner leave to appeal in forma pauperis

because he cannot take an appeal in good faith. *See* Fed. R. App. P. 24(a); 28 U.S.C. § 1915(a)(3).

**WHEREFORE** it is hereby **ORDERED** that the habeas petition [1] is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the motion for leave to file a motion to recuse [47] is **GRANTED**.

**IT IS FURTHER ORDERED** that the motion to recuse [48] is **DENIED**.

**IT IS FURTHER ORDERED** that the motion for immediate consideration [49] is **DENIED AS MOOT**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: June 29, 2023

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 29, 2023, by electronic and/or ordinary mail.

s/ R. Loury
Case Manager